Citation Nr: 1452645 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 07-38 285 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado


THE ISSUES

1. Entitlement to service connection for hypertension, to include as secondary to rheumatoid arthritis and an acquired psychiatric disorder.
 
2. Entitlement to service connection for a gastrointestinal disorder (claimed as peptic ulcer disease), to include as secondary to rheumatoid arthritis.

3. Entitlement to total disability based upon individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Colorado Division of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

McBrine, M., Counsel


INTRODUCTION

The Veteran served on active duty from November 1954 to July 1965. He received an honorable discharge for a period of active service from November 1954 to December 1963; however, he received a dishonorable discharge for a period of active service from December 1963 to July 1965. As such, VA compensation is prohibited for any disease or injuries related to his latter period of service. See 38 C.F.R. § 3.312 (2014).

These matters come before the Board of Veterans' Appeals (Board) on appeal from an October 2006 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Denver, Colorado. 

The Veteran appeared and testified at a personal hearing in August 2010 before the undersigned Acting Veterans Law Judge. A transcript of the hearing is contained in the record.

In an Administrative Decision issued in September 2006, the RO determined that the Veteran's dishonorable discharge for his period of active service from December 1963 to July 1965 was a bar to receipt of VA benefits for any disabilities related to such service. See 38 U.S.C.A. § 101(2) (West 2002); 38 C.F.R. § 3.312. The Veteran did not initiate an appeal with respect to this Administrative Decision, and it is now final.

This appeal was previously before the Board in November 2010. The Board denied claims of entitlement to service connection for tinnitus and bilateral hearing loss, and, following the Veteran's withdrawal request, dismissed claims of entitlement to aortic dissection and alcoholism. The Board remanded the current claims on appeal so that the Veteran could be scheduled for a VA examination. 

This case was again remanded in May 2012. At that time, the Board denied the claim of entitlement to an increased rating for rheumatoid arthritis. As such, that issue is no longer in appellate status. The remaining issues were again remanded for further development, and now come before the Board once again.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a) (2) (West 2002).


FINDINGS OF FACT

1. The preponderance of the evidence is against a finding that the Veteran's current hypertension is etiologically related to a disease, injury, or event in service, to include as secondary to, or aggravated by, any service connected disability.

2. The preponderance of the evidence is against a finding that the Veteran's current claim of a gastrointestinal disorder is etiologically related to a disease, injury, or event in service, to include as secondary to, or aggravated by, any service connected disability.

3. The Veteran has only one service connected disability, rheumatoid arthritis, currently evaluated as noncompensably disabling.

4. The medical and other evidence of record does not indicate the Veteran's service-connected disability precludes him from securing or following a substantially gainful occupation consistent with his education and occupational experience.





CONCLUSIONS OF LAW

1. Hypertension was not incurred in or aggravated by service, and may not be presumed to have been so incurred, nor is it secondary to, or aggravated by, any service connected disability. 38 U.S.C.A. §§ 1101, 1110, 1131, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309, 3.310 (2014).

2. A claimed gastrointestinal disorder, to include peptic ulcer disease, was not incurred in or aggravated by service, and may not be presumed to have been so incurred, nor is it secondary to, or aggravated by, any service connected disability. 38 U.S.C.A. §§ 1101, 1110, 1131, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309, 3.310 (2014).

3. The criteria for entitlement to a TDIU have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.340, 3.341, 4.16 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all the evidence submitted by or on behalf of the Veteran. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

The Board has reviewed both the Veteran's virtual and physical, file in adjudication of this claim.

Stegall Considerations

As noted above, the Board previously remanded this claim several times, most recently in May 2012 for further development, specifically for VA examinations for all the Veteran's claimed disabilities, with additional etiology opinions. The Veteran had further VA examinations in July 2014, and the claims were readjudicated in an August 2014 Supplemental Statement of the Case. Thus, there is compliance with the Board's remand instructions, as to those issues being finally adjudicated in this decision. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting that where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance).

 
Veterans Claims Assistance Act of 2000 (VCAA)

With respect to the Veteran's claim, the Department of Veterans Affairs (VA) has met all statutory and regulatory notice and duty to assist provisions. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014).

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the Veteran and his or her representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). VA must inform the Veteran of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the Veteran is expected to provide. 

VCAA letters dated in February 2005, June 2005, February 2006, March 2006, June 2008, February 2010, and multiple remands, fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b)(1) (2013); Quartuccio, at 187. The Veteran was advised that it was ultimately his responsibility to give VA any evidence pertaining to the claims. The letters informed him that additional information or evidence was needed to support his claims, and asked him to send the information or evidence to VA. See Pelegrini II, at 120-121. The letters also explained to the Veteran how disability ratings and effective dates are determined. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

Furthermore, even if any notice deficiency is present in this case, the Board finds that any prejudice due to such error has been overcome in this case by the following: (1) based on the communications sent to the Veteran over the course of this appeal, the Veteran clearly has actual knowledge of the evidence the Veteran is required to submit in this case; and (2) based on the Veteran's contentions as well as the communications provided to the Veteran by VA, it is reasonable to expect that the Veteran understands what was needed to prevail. See Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009); Fenstermacher v. Phila. Nat'l Bank, 493 F.2d 333, 337 (3d Cir. 1974) ("[N]o error can be predicated on insufficiency of notice since its purpose had been served."). In order for the Court to be persuaded that no prejudice resulted from a notice error, "the record must demonstrate that, despite the error, the adjudication was nevertheless essentially fair." Dunlap v. Nicholson, 21 Vet. App. 112, 118 (2007). 

In this case, the Veteran has been continuously represented by an experienced Veterans Service Organization and has submitted argument in support of his claims. These arguments have referenced the applicable law and regulations necessary for a grant of service connection and TDIU. Thus, the Board finds that the Veteran has actual knowledge as to the information and evidence necessary for him to prevail on his claim and is not prejudiced by a decision in this case. As such, a remand for additional notice would serve no useful purpose and would in no way benefit the Veteran. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on the VA with no benefit flowing to the Veteran are to be avoided).

The Board also concludes VA's duty to assist has been satisfied. The Veteran's VA medical records are in the file. All identified VA treatment records have been associated with the claims file. There is no indication that there are other outstanding relevant medical records that have not been associated with the Veteran's claims file. The Veteran has not indicated that there are any other relevant outstanding private or VA treatment records that should be associated with his claims file, though he was informed in his above noted letters to provide such information. Therefore, the Board finds that the duty to assist the Veteran has been satisfied.

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. See 38 C.F.R. § 3.159(c)(4). In this case, the Veteran was afforded several VA examinations in 2011 and 2014, which contained a thorough analysis of the Veteran's claims file. Based on the foregoing, the Board finds the examination reports to be thorough, complete, and sufficient upon which to base a decision with respect to the Veteran's claim for service connection. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate). As such, the Board finds that the medical evidence of record is sufficient to adjudicate the Veteran's claims.

The United States Court of Appeals for Veterans Claims (Court) has also held that that provisions of 38 C.F.R. § 3.103(c)(2) impose two distinct duties on VA employees, including Board personnel, in conducting hearings: (1) the duty to explain fully the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010).

During the August 2010 hearing, the undersigned identified the issues on appeal and queried the Veteran as to whether there were any relevant records which needed to be obtained. Additionally, the undersigned specifically discussed the significance of medical nexus evidence in his case and the types of factors which the undersigned would consider in evaluating the evidence. The Board thereby fulfilled its duty under Bryant.

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless, as to those claims being finally decided on this appeal. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Service Connection

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty in the active military, naval, or air service. 38 U.S.C.A. § 1110, 1131 (West 2002). That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b) (2013). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).

For Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112, 1137 (West 2002); 38 C.F.R. §§ 3.307, 3.309 (2014). In the instant case, however, there is no presumed service connection because none of these claimed disabilities were medically diagnosed within one year of discharge, as discussed in detail below. Notwithstanding, the Board will consider whether service connection is otherwise warranted for these disabilities on a direct basis.

In the absence of presumptive service connection, to establish a right to compensation for a present disability on a direct basis, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." Davidson v. Shinseki, 581 F.3d 1313, 1315-16 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Except as provided in 38 C.F.R. § 3.300(c), disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. 38 C.F.R. § 3.310. This includes any increase in disability (aggravation). The Court has also held that service connection can be granted for disability that is aggravated by a service-connected disability and that compensation can be paid for any additional impairment resulting from the service-connected disease or injury. Allen v. Brown, 7 Vet. App. 439 (1995) (en banc). When aggravation of a veteran's non- service-connected condition is proximately due to or the result of a service-connected condition, such veteran shall be compensated for the degree of disability over and above the degree of disability existing prior to the aggravation. Allen, supra.

Temporary or intermittent flare-ups of a preexisting injury or disease are not sufficient to be considered aggravation in service unless the underlying condition, as contrasted to symptoms, is worsened. Hunt v. Derwinski, 1 Vet. App. 292, 297 (1991).

With disability compensation claims, VA adjudicators are directed to assess both medical and lay evidence. In certain circumstances lay evidence may be sufficient to establish a medical diagnosis or nexus. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). In addressing lay evidence and determining its probative value, if any, attention is directed to both competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"). See Layno v. Brown, 6 Vet. App. 465, 469 (1994).

In terms of competency, lay evidence has been found to be competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See Barr v. Nicholson, 21 Vet. App. 303, 308-09 (2007) (concerning varicose veins); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (a dislocated shoulder); Charles v. Principi, 16 Vet. App. 370, 374 (2002) (tinnitus); Falzone v. Brown, 8 Vet. App. 398, 405 (1995) (flatfoot). That notwithstanding, a Veteran is not competent to provide evidence as to more complex medical questions and, specifically, is not competent to provide an opinion as to etiology in such cases. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (concerning rheumatic fever); see also Routen v. Brown, supra.

If there is no evidence of a chronic condition during service or an applicable presumptive period, then a showing of continuity of symptomatology after service may serve as an alternative method of establishing the second and/or third element of a service connection claim. See 38 C.F.R. § 3.303(b); Savage v. Gober, 10 Vet. App. 488 (1997). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Evidence of a chronic condition must be medical, unless it relates to a condition to which lay observation is competent. If service connection is established by continuity of symptomatology, there must be medical evidence that relates a current condition to that symptomatology. See Savage, 10 Vet. App. at 495-498 .

In Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013), the Federal Circuit recently overruled Savage and limited the applicability of the theory of continuity of symptomatology in service connection claims to those disabilities explicitly recognized as "chronic" in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013); see also 38 C.F.R. § 3.309(a). 

The Board may weigh the absence of contemporaneous medical evidence against the lay evidence in determining credibility, but the Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence. See Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006); but see Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000) (evidence of a prolonged period without medical complaint after service can be considered along with other factors in the analysis of a service connection claim).

Reviewing the evidence of record as to the Veteran's hypertension, the Veteran's service medical records show no complaints of, or treatment for, hypertension. The earliest evidence of record showing a diagnosis of hypertension is in October 2004, approximately 39 years after his discharge from service.

In the Veteran's hearing testimony before the undersigned Acting Veterans Law Judge in August 2010, he stated that his primary heart doctor told him that his hypertension was related to his arthritis because "arthritis affects the immune system, which affects everything in the body". The Board has reviewed the private medical records of this physician however, and found no medical evidence in those records from the private physician indicating that the Veteran's hypertension is related to his arthritis.

The Veteran received a VA examination for this claimed disability in January 2011, at which time the Veteran was diagnosed with hypertension. The examiner noted that the Veteran had no past history of hypertension during active duty, and reported low blood pressures during active duty. The examiner opined that it is less likely as not that the Veteran's hypertension was caused by or aggravated by service, or was caused by or aggravated by the Veteran's service connected arthritis. He stated that this was based on the fact that rheumatoid arthritis and palindromic rheumatism have not been shown to be a specific risk factor for hypertension. The examiner also noted that the Veteran had not been on any chronic medication for his arthritis which would cause or exacerbate hypertension.

Private treatment records show continuing and ongoing treatment for hypertension, but do not relate it to service or the Veteran's service connected arthritis.

The Veteran submitted a medial treatise discussing potential association between hypertension and rheumatoid arthritis. While the Board has considered this, it does not indicate that the Veteran's palindromic arthritis is directly related to hypertension, and does not specifically relate to the Veteran's situation, therefore, the Board finds this treatise evidence of be of limited probative value.



Thus, considering all evidence of record, the Board finds that the preponderance of the evidence of record is against a finding that the Veteran's hypertension is related to service, either on a direct basis or as secondary to the Veteran's sole service connected disability of rheumatoid arthritis.

Reviewing the evidence of record as to the Veteran's gastrointestinal disorder, service medical records show no complaints of, or treatment for, any ulcer or other chronic gastrointestinal disorder.

Treatment records contained in the claims file show that the Veteran underwent an upper gastrointestinal endoscopy in August 2000. The endoscopy revealed Grade II esophagitis with no bleeding, a medium hiatus hernia, and one bleeding cratered gastric ulcer with pigmented material measuring 50 mm in his largest dimension. The gastric ulcer was successfully injected with epinephrine for homeostasis. He was given a prescription for Prevacid, and told to avoid non-steroidal anti-inflammatory drugs (NSAIDs). 

In December 2000, the Veteran was given a prescription for Celebrex and Vioxx for his arthritis. He was also noted to be taking Pepcid AC. 

In October 2004, he complained of epigastric pain, and the Veteran sought private treatment to rule out another ulcer. An esophagogastroduodenoscopy revealed mild erosive esophagitis and chronic gastritis, but no ulcers. Upon further evaluation, his abdominal pain was found to be due to an aortic dissection type III which led to a coma, and the Veteran was hospitalized for more than one month.

An undated private treatment record, seemingly from the time he was hospitalized in 2004, included a diagnosis of gastroesophageal reflux disease (GERD), and a prescription for Omeprazole.

During his August 2010 Board hearing, the Veteran testified that the medication he was taking to control pain symptoms associated with his rheumatoid arthritis resulted in the development of a gastric ulcer in 2000. He did not allege any residuals of his 2000 ulcer, nor does the evidence of record indicate he was treated for his ulcer again after 2000. 

In January 2011, the Veteran was afforded a VA examination. He reported the history of his ulcer, including treatment in August 2000 with an injection of epinephrine and resolution of the bleeding. He reported he had been kept on Omeprazole since the episode of bleeding, and has no residual symptoms. He reported no abdominal pain, nausea, vomiting, or melena. He had no symptoms of heartburn or GERD. The examiner opined that the Veteran's August 2000 peptic ulcer was at least as likely as not caused by the Celebrex and aspirin the Veteran was prescribed for his rheumatoid arthritis. The examiner indicated that the Veteran's alcohol consumption and smoking were also factors in his development of the August 2000 ulcer. The examiner diagnosed "peptic ulcer disease, status post bleeding gastric ulcer, presently asymptomatic on chronic Omeprazole therapy."
The Board has carefully considered this opinion, however, it notes that this opinion was based in part on the Veteran's reported history that he took Celebrex until he developed an upper GI bleed in August 2000. This statement is inconsistent with the Veteran's medical records which clearly show that the Veteran was prescribed Celebrex for the treatment of early osteoarthritis in December 2000, well after the Veteran's upper GI bleed. Further, the medical evidence shows that the Veteran's ulcer healed by November 2000, with no further recurrence, making it impossible that the medicine prescribed subsequent to that, in December 2000, could have caused or exacerbated the Veteran's ulcer. Therefore, the Board finds this opinion to be of very limited probative value.

The Veteran received a final VA gastrointestinal examination in July 2014. The Veteran's medical history was reviewed. The examiner indicated that the Veteran's GERD had no active symptoms and was completely controlled with medication. The examiner also diagnosed the Veteran with a gastric ulcer, complicated due to chronic aspirin use and H. pylori gastritis, resolved completely with elimination of aspirin and eradication of H. pylori. The examiner specifically stated that the Veteran has had no residuals from his August 2000 peptic ulcer from November 2000 to the present. In support of this statement the examiner noted that the Veteran had no recurrent ulcer since the bleeding episode in August 2000. The gastric ulcer was completely healed by November 2000, per upper GI endoscopy. There was no ulcer on upper endoscopy in October 2004 as well. He has no residuals symptoms of peptic ulcer disease. He had no abdominal pain, nausea, vomiting, or evidence of GI bleeding. His weight has been stable. The causative factors of the gastric ulcer had been eliminated by August 2000. The smoking risk was stopped in October 2004. The medication therapy since October 2004 has been for control of GERD, and not for the August 2000 ulcer, which was completely resolved by November 2000. The examiner also indicated that in his opinion, the Veteran's GERD with hiatal hernia was not caused or aggravated by his service connected rheumatoid arthritis. He stated that there was no evidence that GERD was associated with rheumatoid arthritis or with aspirin or NSAID use. It is caused by transient relaxations and/or decreased lower esophageal sphincter pressure. 

Therefore, considering all evidence of record, the Board finds that service connection is not warranted for any gastrointestinal disorder. While the evidence shows that the Veteran had an ulcer August 2000 that, resolving all doubt in the Veteran's favor, was related to medication that he took for his service connected arthritis, that temporary condition was completely relieved by November 2000, without residuals. Thus, there is no permanent aggravation found, and the preponderance of the evidence of record indicates that this disability is not directly related to service or secondary to any service connected disability.

As the preponderance of the evidence is against these claims, the benefit-of-the-doubt doctrine does not apply, and they must be denied. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App 49, 55-57 (1990).

TDIU 

VA will grant TDIU when the evidence shows that the Veteran is precluded, by reason of his service-connected disabilities, from obtaining and maintaining any form of gainful employment consistent with his education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16. TDIU benefits are granted only when it is established that the service-connected disabilities are so severe, standing alone, as to prevent the retaining of gainful employment. 38 C.F.R. § 4.16(a). The relevant issue is not whether the Veteran is unemployed or has difficulty obtaining employment, but whether the Veteran can perform the physical and mental acts required by employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). In determining whether unemployability exists, consideration may be given to the Veteran's level of education, special training, and previous work experience, but no consideration may be given to age or impairment caused by nonservice-connected disabilities. 38 C.F.R. §§ 4.16, 4.19. 

A total disability rating may be assigned, where the schedular rating is less than total, where, if there is only one disability, the disability is rated at 60 percent or more, or where, if there are two or more disabilities, at least one disability is rated 40 percent or more and there is sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). Where these percentage requirements are not met, entitlement to benefits on an extraschedular basis may be considered when the veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities, and consideration is given to the veteran's background including his employment and educational history. 38 C.F.R. § 4.16(b). The Board does not have the authority to assign an extraschedular TDIU in the first instance. Bowling v. Principi, 15 Vet. App. 1 (2001). 

Service connection is in effect only for rheumatoid arthritis, at a noncompensable evaluation. Thus, the percentage requirements for a TDIU are not met at any time during the appeal. Therefore, the issue is whether the Veteran is unable to obtain and maintain any form of gainful employment consistent with his education and occupational experience by reason of his service-connected disabilities thus entitling him to referral for an extraschedular TDIU. 38 C.F.R. § 4.16(b).

The Veteran's records show that, after his military discharge, the Veteran worked from 1965 to 1972 for a department store as a sales manager. He worked as superintendent of road construction from 1972 to 1978. He worked in auto and truck sales from 1978 to 2002, and then in paint sales until March 2003. He has not worked since that time, and has not looked for work since October 2004, when he had a dissecting abdominal aortic aneurysm.

In the Veteran's hearing testimony before the undersigned Acting Veterans Law Judge in August 2010, he talked about the impact he felt all his claimed disabilities had on his activities of daily living.

In a January 2011 VA examination, the VA examiner noted that employment activities which involve heavy labor would be limited due to his service connected disability of palindromic rheumatism which could possibly be exacerbated by frequent bending, stooping, lifting, and carrying heavy objects, however, he is able to do sedentary work with the ability to stretch or move every two hours. The examiner noted that he could write and type for 1 to 2 hours and was able to communicate.

As noted in his most recent examinations in July 2014, the Veteran indicated that he walks about three miles a day with his wife. He reports no restrictions on walking, standing, or sitting. He avoids lifting anything over 20 pounds due to his prior abdominal aortic aneurysm. The examiner at that time found that the Veteran's service connected disability did not preclude him from sedentary or physical activity. The examiner noted that, within an 8 hours' workday, the Veteran could safely lift and carry at least 20 pounds, push and pull light or heavy objects, bend and twist, kneel or squat, stand, sit, climb, drive, walk, write, keyboard, answer and speak on the phone. Currently his service connected disability does not impact his functioning in any way.

The Board finds that the evidence of record does not show that the Veteran is unable to obtain and maintain any form of gainful employment consistent with his education and occupational experience by reason of his service-connected disabilities. The Veteran only has one disability rated as noncompensably disabling, and the evidence of record clearly shows that it has minimal impact on his ability to work.

The Board finds competent and credible the lay assertions of record that the Veteran cannot work due to his service-connected disabilities, as he has knowledge of his symptoms, which can be observed and described by a lay person. 38 CFR § 3.159(a)(2) (2014). But a finding of unemployability, or the ability to perform sedentary work, is not a matter capable of lay observation, as such opinions requires specialized education, training, or experience. See 38 CFR § 3.159(a)(2). Thus, any assertions by the Veteran or other lay persons are simply outweighed by the examiner's findings that the Veteran is able to perform certain types of work. Accordingly, the evidence of record, taken as a whole, portrays the Veteran as having employment-related problems caused by his service-connected disabilities. Crucially however, the evidence does not indicate that this disability alone results in his unemployability. 

In conclusion, for the reasons and bases expressed above, the Board finds that the preponderance of the evidence is against the Veteran's claim for a TDIU. In particular, referral to appropriate authority for consideration on an extraschedular basis under the provisions of 38 C.F.R. § 4.16(b) is not warranted, and the benefit sought on appeal is accordingly denied.


ORDER

Entitlement to service connection for hypertension, to include as secondary to rheumatoid arthritis and an acquired psychiatric disorder, is denied.
 
Entitlement to service connection for a gastrointestinal disorder (claimed as peptic ulcer disease), to include as secondary to rheumatoid arthritis, is denied.

Entitlement to a TDIU is denied.



____________________________________________
E. I. VELEZ
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs